IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ALLAN ROBERTS et al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | ) Case No. 1:20cv1227 |
| | ) |
| **ISLAMIC REPUBLIC OF IRAN** | ) |
| | ) |
| **Defendant.** | ) |

**MEMORANDUM IN SUPPORT OF THE FAMILY MEMBER
PLAINTIFFS' RENEWED MOTION FOR DEFAULT JUDGMENT**

The foreign citizen family member plaintiffs ("the Family Member Plaintiffs")[1] come before this Court seeking a finding of liability against the Islamic Republic of Iran ("Iran") and referral of their damages claims to a special master. In support thereof, the Family Member Plaintiffs state as follows:

**I.     INTRODUCTION**

In its January 24, 2022 Memorandum Opinion, the Court granted relief to the Victim Plaintiffs[2] and Mughal Family Plaintiffs[3] for their claims under Section 1605A(c)'s private cause

---

[1] The foreign citizen family member plaintiffs include Allan Roberts, in his capacity as the natural guardian of C.D.R., Bethan Johnson, Natasha Grove, Steven Crowley, in his capacity as the natural guardian of O.J.C. and L.A.C., Sarah Crowley, Michael Crowley, Patricia Crowley, Kristin Jameson, Edith Nichol, Thomas Jameson, George Riekert, in his capacity as the natural guardian of M.R., Simonè Riekert, Simon Riekert, Wilhelmina Oosthuizen, Chante Oosthuizen, Shibone De Bruyn, Shaun Oosthuizen, Magdalena Oosthuizen, Maggie Kieser, Emogene Boje, Sone Smith, Gavin Smith, Johannes Kieser, Hester Hart, Arnoldus Kieser, Loraine Steenberg, René Botha, Jené Steenberg Marais, Deseré Steenberg, Stephan Brink, in his capacity as executor of the Estate of Estelle Brink, Brendon Botha, Leanelle Botha, Janet Capazorio, Brandon Capazorio, Shannon Figg, George Capazorio, Maud Capazorio, Bettina Capazorio, Carin Capazorio, Sarel Du Plessis, Susan De Clercq, Rozelle Adams, and Morne Bruwer.
[2] The Victim Plaintiffs include Allan Roberts, Jaco Botes, Steven Crowley, John Jameson, Abdul Ghaffar Mughal, George Riekert, Christiaan Oosthuizen, George Kieser, Johann Steenberg, Leon Botha, Dean Capazorio, Pierre du Plessis, and Schalk Bruwer ("the Victim Plaintiffs").
[3] The Mughal Family Plaintiffs include Abdul Ghaffar Mughal, as the natural guardian of N.M. and M.M., Sitorai Khasanzod, Khalid Mughal, Hamid Mughal, and Angela Mughal. Unlike the Family Member Plaintiffs, the Mughal Family Plaintiffs are American citizens.

of action. ECF No. 24 at 30. After reviewing Plaintiffs' affidavits and expert reports, the Court concluded that it had both subject matter jurisdiction and personal jurisdiction, and then held "Iran responsible for the EFP attacks in this case." *Id*. at 12.

But the Court denied, without prejudice, the claims of the Family Member Plaintiffs, indicating that "without evidence of British, South African, and Iraqi law, the Court cannot grant default judgment on Plaintiffs' IIED claims on this record." *Id.* at 2. To address the Court's concerns, Plaintiffs respectfully supplement their prior argument regarding the applicability of D.C. law, and subsequently proffer the opinions of three experts on foreign law and present their opinions in support of this Renewed Motion for Default Judgment.

## II.     PROCEDURAL HISTORY

Plaintiffs filed their Complaint in this matter on May 11, 2020. ECF No. 1. A summons was issued against Iran the following day. ECF No. 3. Plaintiffs initiated service by mail under 28 U.S.C. § 1608(a)(3) on June 8, 2020, ECF No. 6, which was processed by the Clerk's Office on June 9, 2020 and failed on July 15, 2020. ECF No. 7. After waiting the requisite thirty days, Plaintiff initiated diplomatic service pursuant to 28 U.S.C. § 1608(a)(4). ECF No. 8. Iran was formally served in this manner on November 4, 2020. ECF No. 13. Plaintiffs requested entry of default on January 12, 2021, ECF No. 14, and the Clerk entered it the next day. ECF No. 15. The Court granted default judgment as to liability for the Victim Plaintiffs and the Mughal Family Plaintiffs—but denied without prejudice the Family Member Plaintiffs' IIED claims—on January 24, 2022. ECF No. 24. The Court has appointed a Special Master to consider damages evidence related to the Victim Plaintiffs and the Mughal Family Plaintiffs. ECF Nos. 26–27.

### III. LEGAL STANDARD FOR ENTRY OF DEFAULT

"Under the FSIA, a court cannot simply enter default judgment; rather, out of respect for the principle of sovereign immunity, it must ensure that the plaintiffs have established their claim or right to relief by evidence that is satisfactory to the court." *Estate of Botvin v. Islamic Republic of Iran*, 873 F. Supp. 2d 232, 236 (D.D.C. 2012); *see also* 28 U.S.C. 1608(e). This standard is identical to the standard for entry of default judgment against the United States under Fed. R. Civ. P. 55(d). *See Hall v. Republic of Iraq*, 328 F. 3d 680, 683–84 (D.C. Cir. 2003).

"When the Defendant State fails to appear and the plaintiff seeks a default judgment, the FSIA leaves it to the court to determine precisely how much and what kinds of evidence the plaintiff must provide." *Han Kim v. Democratic People's Republic of Korea*, 774 F. 3d 1044, 1047 (D.C. Cir. 2014); *see also Reed v. Islamic Republic of Iran*, 845 F. Supp. 2d 204, 211 (D.D.C. 2012) (via sworn affidavits); *Salazar v. Islamic Republic of Iran*, 370 F. Supp. 2d 105, 109 n.6 (D.D.C. 2005) (by taking "judicial notice of related proceedings and records"). In sum, evidence "satisfactory to the Court," *see* 28 U.S.C. 1608(e), may be provided at an evidentiary hearing, but it can also consist of "sworn affidavits or declarations, prior judicial fact-findings, and other documents submitted in accordance with the Federal Rules of Evidence." *Ewan v. Islamic Republic of Iran*, 466 F. Supp. 3d 236, 242 (D.D.C. 2020).

In weighing the evidence, the trial court must consider Congress's stated purpose in enacting § 1605A—to "compensate the victims of terrorism [so as to] punish foreign states who have committed or sponsored such acts and [to] deter them from doing so in the future," *Kim*, 774 F. 3d at 1408 (citation omitted)—while simultaneously recognizing the difficulty in obtaining "firsthand evidence and eyewitness testimony . . . from an absent and likely hostile sovereign," *Owens v. Republic of Sudan*, 864 F. 3d 751, 785 (D.C. Cir. 2017). Although "[t]he

3

Court must scrutinize the plaintiff's allegations," *Bluth v. Islamic Republic of Iran*, 203 F. Supp. 3d 1, 17 (D.D.C. 2016), it should also "accept as true the plaintiffs' uncontroverted evidence," *see Elahi v. Islamic Republic of Iran*, 124 F. Supp. 2d 97, 100 (D.D.C. 2000); *see also Bennett v. Islamic Republic of Iran*, 507 F. Supp. 2d 117, 125 (D.D.C. 2007).

## VI.   LIABILITY

The Family Member Plaintiffs incorporate the Court's prior conclusions regarding subject matter jurisdiction, personal jurisdiction, and causation by reference in the present motion. *See* Mem. Op., ECF No. 24 at 30. Once jurisdiction is established, *see id*. at 28–29, liability may be determined in a variety of ways. Historically, the FSIA was not interpreted to create a federal cause of action, but rather to operate as a "pass-through" for state law claims. *See Owens*, 864 F.3d at 763; *Cicippio-Puelo v. Islamic Republic of Iran*, 353 F.3d 1024, 1033 (D.C. Cir. 2004). The FSIA was amended in 2008 to explicitly authorize the federal cause of action now found in Section 1605A(c), but this amendment "did not upset the prior law permitting plaintiffs to assert state law claims after clearing the hurdle of foreign sovereign immunity." *Fritz v. Islamic Republic of Iran*, 320 F. Supp. 3d 48, 89 (D.D.C. 2018) (citing *Owens,* 864 F.3d at 807–09); *see W.A. v. Islamic Republic of Iran*, 427 F. Supp. 3d 117, 138 (D.D.C. 2019) ("the creation of a federal cause of action in § 1605A(c) did not revoke Plaintiffs' ability to recover pursuant to state law causes of action").

Therefore, after 2008, plaintiffs may pursue either the federal cause of action or state law causes of action. For family member plaintiffs of foreign citizenship, like the individuals at issue here, state law causes of action are the required path. *See, e.g.*, *W.A.*, 427 F. Supp. 3d at 139. This Renewed Motion therefore focuses its discussion on the Court's question of *what* state law applies to the Family Member Plaintiffs' claims. *See* ECF No. 24 at 2.

In its Memorandum Opinion, the Court concluded that "D.C. law cannot apply to plaintiffs' IIED claims" because "none of the plaintiffs were D.C. domiciliaries at the time of the EFP Attacks. Nor did the EFP attacks occur in the District. Applying D.C. law to this dispute would not further the compensatory or conduct-regulating policies underlying D.C.'s law permitting recovery for IIED." ECF No. 24 at 35–36.

With deference to the Court's prior Opinion, the Family Member Plaintiffs respectfully supplement their prior argument as to the possible application of D.C. law to the facts of this case. Additionally, the Family Member Plaintiffs present evidence of Iraqi, South African, and English laws applicable to IIED claims, as specifically requested by the Court. *See* ECF No. 24 at 36. But most importantly, under any of these possible paths forward, the Family Member Plaintiffs maintain an avenue of recovery for the harms they suffered.

### A. D.C. Law May Still Apply to the Family Member Plaintiffs' Claims.

Plaintiffs' primary position remains that it is most appropriate for D.C. law to be applied to the Family Member Plaintiffs' IIED claims. In *Owens v. Republic of Sudan*, the court addressed the identical issue to the one at bar:

> Here, as in *Estate of Doe*, the choice of law analysis pertains only to non-U.S. national family members of victims of the terrorist attacks (who lack a federal cause of action), and the balance of interests suggests a different outcome from the FSIA cases involving U.S. citizen plaintiffs.
>
> Consistent with *Dammarell* and other FSIA cases, United States domestic law *remains more appropriate* in state-sponsored terrorism cases than foreign law. Furthermore, in light of the 2008 amendments to FSIA that seek to promote uniformity and extend access to U.S. federal courts to *foreign national immediate family members of victims of terrorism*, the law of the *forum* state, the District of Columbia, should provide the rule of decision.

826 F. Supp. 2d 128, 154–55 (D.D.C. 2011) (emphasis added).

As stated in *Owens*, FSIA cases require a specialized approach to the Court's choice-of-law analysis. *See id*. Where plaintiffs are foreign citizen family members of victims of terrorist attacks, D.C. law applies, even where none of the plaintiffs are domiciled in the District of Columbia and the attack occurred overseas:

> [T]he nationalities and domiciles of the various victims and plaintiffs are disparate and varied, and the defendants have no connection to the United States. But a unifying factor in this case is that all of plaintiffs' claims derive from employment with a federal agency headquartered in the District of Columbia, the seat of the federal government.

*See id*. at 154–56; *see also Fritz,* 320 F. Supp. 3d at 91 (discussing *Owens*, 826 F. Supp. 2d at 154) (holding that "D.C. law, rather than the law of the place of the tort (Kenya and Tanzania) or the place of the domicile of each plaintiff (including both U.S. and foreign locations), was appropriate").[4] As *Owens* and its progeny relay,[5] the 2008 FSIA Amendments confirmed the landscape by which foreign family member plaintiffs may bring suit under FSIA; namely, that D.C. law should apply to "promote uniformity and extend access to U.S. federal courts." 826 F. Supp. 2d 128, 154–55 (D.D.C. 2011).

---

[4] The Court's Memorandum Opinion looks to *Doe v. Exxon Mobil Corp*. for the proposition that the district courts "should have compared the interests of the *individual jurisdictions*, not the interest of the United States as a whole." ECF No. 24 at 35 (citing 654 F.3d 11 (D.C. Cir. 2011), *affirmed in part on reh'g, Doe v. Exxon Mobil Corp*., 527 F. App'x 7 (D.C. Cir. 2013)). While the court in *Doe* applied the law of the plaintiff's domicile (Indonesia), it is important to note that the *Doe* plaintiffs brought their claims pursuant to the Alien Tort Statute and Torture Victim Protection Act, not the FSIA. 654 F.3d 11. The analysis under the FSIA differs because it includes the 2008 Amendments and their subsequent effect on the claims of foreign family member plaintiffs. *Owens*, 826 F. Supp. 2d at 154–55.

[5] *See, e.g., W.A.*, 427 F. Supp. 3d at 139 (finding that "the law of the forum state, the District of Columbia, should provide the rule of decision" for foreign national family member plaintiffs of foreign national victim killed "because of his or her relationship to the United States government"); *Abedini v. Gov't of Islamic Republic of Iran*, 422 F. Supp. 3d 118, 135 (D.D.C. 2019) (applying D.C. law to foreign-national family member plaintiff's IIED claim to prevent "inconsistent results among family members of FSIA terrorism victims"); *Fritz*, 320 F. Supp. 3d at 91 (emphasizing the "unique interest" of the United States and concluding that "the same considerations apply here and that D.C. law, rather than Canadian or Iraqi law, should govern" the foreign family member claims); *Est. of Doe v. Islamic Republic of Iran*, 808 F. Supp. 2d 1, 21 (D.D.C. 2011) (concluding that "in light of the 2008 amendments to FSIA that seek to promote uniformity and extend access to U.S. federal courts to foreign national immediate family members of victims of terrorism, the law of the forum state, the District of Columbia, should provide the rule of decision").

As previously analyzed in Plaintiffs original Memorandum in Support of Motion for Default, District of Columbia law provides a cause of action for the Family Member Plaintiffs that is the functional equivalent of the solatium damages available under 28 U.S.C. § 1605A(c). *See* ECF No. 17 at 33–34. Accordingly, the Family Member Plaintiffs respectfully submit that they have a valid cause of action under D.C. law for intentional infliction of emotional distress that is comparable to the solatium claims awarded to the Mughal Family Plaintiffs and other American citizen family member plaintiffs before this Court.

Importantly, however, if the Court does determine that the application of foreign law is more appropriate, such a finding does not impact the substantive validity of the Family Member Plaintiffs' claims.

**B.      Iran would also be Liable to the Family Member Plaintiffs under Iraqi Law.**

When deciding between the application of the law of the Family Member Plaintiffs' domicile and the place of the attack, the latter presents a tighter "nexus" to the issues at hand. *See Fritz*, 320 F. Supp. 3d at 90 (finding that the foreign family member plaintiff's "nexus to Iraq, in contrast, is stronger because that is where [the victim] served, and it is where he was captured, tortured, and killed"). Thus, if the Court chooses not to apply D.C. law to the Family Member Plaintiffs' claims, this Court should then apply Iraqi law. If the Court does so, the Family Member Plaintiffs will prevail on their claims for emotional distress.

Plaintiffs retained Mr. Mohammed Juma Abed to analyze the potential recovery for emotional distress under Iraqi law by family members of terrorism victims. *See* Expert Witness Report of Mohammed Juma Abed, attached as "Exhibit 1." In addition to nearly two decades of legal experience, Mr. Abed participated in the drafting of the USAID Iraq Access to Justice legal handbook, provided legal education workshops during the drafting of Iraq's compensation laws

for victims of terrorism, and has served as a consultant on issues of Iraqi law in the media. *Id.* ¶ 2. Based on these credentials, Plaintiffs proffer Mr. Abed as an expert on Iraqi law.

It is Mr. Abed's opinion that "the concept of moral damage in civil liability under Iraqi law would allow immediate family members of those targeted by terrorist attacks a claim for relief under Iraqi law for the injuries to their loved ones as well as their own emotional distress." *Id.* ¶ 6. He describes "moral damage" as akin to what U.S. law considers emotional distress; an injury to the "non-financial interests of an individual." *Id.* ¶ 7. This can include "damages resulting from injuries upon a family member," and injuries to "feelings, emotions, and/or the dignity of another." *Id.*

Iraqi law requires proof of (1) a harmful act, and (2) a causal relationship to the plaintiff's damages. *Id.* ¶ 8. It is Mr. Abed's opinion, to a reasonable degree of professional certainty, that the Iraqi standard for this rule "could be satisfied by an individual who suffered emotional distress due to a terrorist attack against an immediate family member." *Id.* Given that both a harmful act and causal connection have been presented in this instance, *see* ECF No. 16 at 33, the Family Member Plaintiffs can recover for their emotional distress if the Court decides to adopt Iraqi law.

    **C.**  **Alternatively, Iran is Still Liable to Family Member Plaintiffs if the Court Applies the Law of the Individuals' Domicile.**

Likewise, if the Court instead chooses to emphasize the third factor of the "most significant relationship test," i.e., "the domicile, residence, nationality, place of incorporation and place of business of the parties," the Family Member Plaintiffs would still have a cause of action under South African and British law.

In response to the Court's prior ruling, Plaintiffs sought out Tzvi Brivik, an attorney with over twenty years of experience in litigating personal injury claims in South Africa, *see* Expert

8

Witness Report of Tzvi Brivik, attached as "Exhibit 2," ¶ 15, and Mr. Charles Bagot, King's Counsel, of Gatehouse Chambers in London England, *see* Expert Witness Report of Charles Bagot, KC, attached as "Exhibit 3." Mr. Bagot has practiced as a barrister in England and Wales for over twenty-five years, with an emphasis on personal injury and clinical negligence claims. *Id.* ¶ 2. Plaintiffs hereby proffer Mr. Brivik as an expert on South African law and Mr. Bagot as an expert on English law.

It is Mr. Brivik's opinion that South African courts "recognize an action in delict for damages caused by intentional or negligent infliction of emotional shock." Ex. 2 ¶ 15. He states that in South Africa "an action in delict may lie for patrimonial loss or sentimental damage cause by intentional or negligent infliction of emotional shock." *Id.* ¶ 3. South African law defines "emotional shock" as a "shock suffered by a person without necessarily sustaining bodily injury, caused when a third party observes or is mortified by an unpleasant or disturbing event, e.g., the killing of a relative or a person with whom the third party had a close emotional relationship." *Id.* ¶ 4. Such claims do not necessarily require that the plaintiff personally observe the circumstance causing the shock, *id.* ¶ 6, and "courts will exercise a wide discretion in quantifying a plaintiff's damages," *id.* ¶ 15.

Mr. Brivik identifies the following as requirements for "delictual liability" in cases involving emotional shock: (1) a voluntary act causing another emotional shock, (2) a causal nexus between the act and harm, (3) wrongfulness, e.g., a "relatively serious physical or mental harm," (4) fault, and (5) damage in the form of physical or mental harm. *Id.* ¶ 11. All five of these requirements are met in this instance: (1) Iran's material support to the proxy militias constitutes a voluntary act; (2) a causal connection has been established between Iran's support and the EFP Attacks; ECF No. 24 at 12 ("The Court finds Iran responsible for the EFP attacks in

9

this case"); (3) the attacks resulted in extrajudicial deaths and harm to the Victim Plaintiffs; (4) Iran is at fault; and (5) the Family Member Plaintiffs of South African domicile have suffered significant emotional harm as a result. Accordingly, South African law, if applied to any of the Family Member Plaintiffs, would provide a cognizable claim for relief.

Similarly, Mr. Bagot considered several avenues of liability under English law in his report. Ex. 3 ¶ 70. He concludes that the "VOTCS [Victims of Overseas Terrorism Compensation Scheme] would have provided a realistic avenue of recovery for the English Plaintiffs," and that it "provides an appropriate analogy to the US IIED claims, demonstrating that there is a viable cause of action in English law." *Id*. ¶¶ 65, 73. Mr. Bagot's own expert analysis of the Family Member Plaintiff claims in light of the VOTCS criteria and analyses concludes that "VOTCS would have provided a realistic avenue of recovery for the English Plaintiffs, on a properly purposive reading of the scheme and relevant guidance." *Id*. ¶ 74.

Mr. Bagot opines that recovery under VOTCS is especially strong for Family Member Plaintiffs suffering injuries after the act's enactment January 2010, *id*. ¶ 65, but also that a discretionary *ex gratia* regime exists for attacks prior to the enactment of VOTCS. *Id*. ¶ 66. As Mr. Bagot explains, "it is more than merely arguable that such an *ex-gratia* scheme would be interpreted to permit the Plaintiffs to qualify" and that the Family Member Plaintiffs would likely be granted relief because of the nature of their harm and the forum's desire to maintain consistency. *Id*. ¶ 66. Thus, an avenue of compensatory relief also exists under English law.

## VII. CONCLUSION

The claims before the Court are squarely in line with the policy and purpose behind the FSIA's terrorism exception. Iran purposefully manufactured EFPs, supervised and directed their distribution into Iraq, and trained Iraqi militias in their use. These actions were taken for the

express purpose of maximizing the casualties inflicted on Americans and their allies in Iraq. As the manufacturer, state sponsor, supplier, trainer, and instigator of the EFP Attacks, Iran is liable to the Family Member Plaintiffs for the harm they suffered by their connection to the United States. As explained above, Iran's liability extends to claims brought by the family members of United States contractors regardless of whether this Court applies D.C., Iraqi, South African, or English law. Accordingly, Plaintiffs seek justice from this Court through a finding of liability against Iran for the intentional infliction of emotional distress against each of the Family Member Plaintiffs.

Plaintiffs request that the Court issue an Order GRANTING their Renewed Motion for Default Judgment against Iran as to liability for harm inflicted on the Family Member Plaintiffs and referring their claims to the appointed special master in this case for the hearing of evidence as to their damages.

Dated: November 22, 2022                Respectfully submitted,

                                        /s/ Kevin A. Hoffman
                                        Kevin A. Hoffman (DC Bar No. 1044559)
                                        Randy D. Singer (DCD Bar No. VA0157)
                                        SINGER DAVIS, LLC
                                        1209A Laskin Road
                                        Virginia Beach, VA 23451
                                        Phone: (757) 301-9995
                                        Fax: (757) 233-1084
                                        Email: kevin.hoffman@singerdavis.law
                                        Email: randy.singer@singerdavis.law
                                        *Counsel for Plaintiffs*